UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BETTY M. ALEXIDOR,

                                        Plaintiff,

        -v-

PATRICK R. DONAHOE, Postmaster
General,

                                        Defendant.

No. 11-CV-9113 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Betty M. Alexidor
Jamaica, NY
*Pro Se Plaintiff*

Brandon H. Cowart, Esq.
U.S. Attorney's Office, S.D.N.Y.
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Betty M. Alexidor ("Plaintiff"), proceeding pro se, brings this Action against

Patrick R. Donahoe, Postmaster General ("Defendant"), alleging that the United States Postal

Service ("USPS") discriminated against her on the basis of her disability, race, sex, and national

origin, and retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964, as

codified, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act, as codified, 42

U.S.C. §§ 12112–12117.[1]  Before the Court is Defendant's Motion for Summary Judgment

---

[1] Plaintiff names USPS as the defendant in this Action.  However, as noted in the Court's prior Opinion, (*see* Op. & Order 1 n.1 (Dkt. No. 95)), "[t]he proper defendant in a Title VII case brought by a USPS employee is the Postmaster General," *Mathirampuzha v. Potter*, 371 F. Supp. 2d 159, 163 (D. Conn. 2005). (citing 42 U.S.C. § 2000e-16(c)); *see also Tulin v. U.S. Postal*

pursuant to Federal Rule of Civil Procedure 56 (the "Motion").  (*See* Dkt. No. 100.)  For the reasons stated below, the Motion is granted.

## I.  Background

A full factual and procedural history of the Action is recounted in the Court's September 30, 2016 Opinion & Order ("Opinion"), (*see* Op. & Order ("Opinion") 2–7 (Dkt. No. 95)), and therefore, what follows is an abbreviated account of the relevant facts and procedural history subsequent to the Court's prior Opinion.

### A.  Factual Background

Plaintiff is an African-American woman who began working for USPS as a letter carrier in 2001.  (Def.'s Local Rule 56.1 Statement of Undisputed Facts ("Def.'s 56.1") ¶ 1 (Dkt. No. 107); Decl. of Betty Alexidor ("Alexidor Decl.") ¶ 5 (Dkt. No. 110).)[2]  Plaintiff suffered an on-

---

*Serv.*, No. 06-CV-5067, 2008 WL 822126, at \*4 (E.D.N.Y. Mar. 25, 2008) (noting that the proper defendant in an action pursuant to Title VII "is the head of the federal agency in which the alleged discriminatory actions occurred; in this case, John E. Potter, Postmaster General").

[2] The entirety of Plaintiff's filing in opposition to the instant Motion was a document entitled "Declaration of Betty Alexidor," in which Plaintiff states that "[i]t was noted by the Court and [D]efendant's attorney, [Plaintiff] only responded to the Rule 56.1 statement."  (*See* Alexidor Decl. ¶ 3.)  Plaintiff asserts that "[t]o better represent [her]self, [she] will use this declaration to respond to ALL oppositions to [her] complaints."  (*Id.*)  Plaintiff's Declaration does not contain a response to Defendant's Rule 56.1 statement.  However, as the Declaration specifically asserts that "[a]ll documents/evidence to support this declaration have already been submitted to the Court by [Plaintiff] and [D]efendant[]," (*id.* ¶ 17), the Court cites to Plaintiff's prior Rule 56.1 statement, (*see* Aff'n in Opp'n to Def.'s Mot. for Summ. J. (Dkt. No. 87)), where it responds to facts asserted by Defendant in its Rule 56.1 statement in connection with the instant Motion.

Similarly, Defendant's Rule 56.1 statement submitted in support of the instant Motion only addresses material facts relevant to the Motion.  As such, where helpful when recounting facts relevant to Defendant's previous motion for summary judgment, the Court refers to Defendant's prior 56.1 statement.  (*See* Def.'s Corrected Local Rule 56.1 Statement of Undisputed Facts ("Def.'s Prior 56.1") (Dkt. No. 93).)

the-job injury that resulted in her taking disability leave beginning July 17, 2008. (Def.'s 56.1 ¶ 2; Aff'n in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s 56.1") ¶ 5 (Dkt. No. 87).)

Pursuant to the Department of Labor ("DOL") Office of Workers Compensation Programs ("OWCP"), federal employees receive Federal Employee Compensation ("FEC") benefits for disabilities due to personal injury sustained while in the performance of their duties. (Def.'s 56.1 ¶ 4.) DOL forms CA-7 and CA-7a allow a worker to claim compensation for lost wages due to injury. (*Id.* ¶ 5.) The forms require the worker to specify the number of wage-hours she would have been working had she not sustained the injury. (*Id.*) To ensure her eligibility for FEC benefits for injuries sustained in performance of her work, Plaintiff was put on the Daily Roll and required to regularly submit updated CA-7 and CA-7a forms. (*Id.* ¶ 6.)[3] In the forms, Plaintiff was to identify the number of wage hours lost due to injury for each preceding work period. (*Id.*) Once Plaintiff submitted the forms, USPS management compared them to personnel records to confirm accuracy, (*id.* ¶ 7), and then submitted the forms to OWCP, (*id.* ¶ 8).

On September 21, 2010, Plaintiff returned to work on a part-time basis, working a schedule of four hours per day, five days a week. (*Id.* ¶ 10; Pl.'s 56.1 ¶ 8.) For the remaining four hours per day, Plaintiff was on Leave Without Pay ("LWOP") and was to be placed on the Daily Roll. (*See* Decl. of Aleta Rice ("Rice Decl.") ¶ 4 (Dkt. No. 108).) Despite Plaintiff's return to work, OWCP erroneously kept Plaintiff on the Periodic Roll for the entire pay period of

---

[3] Once a FEC claim is accepted, OWCP places the claimant on either the Daily Roll or the Periodic Roll. (*See* Decl. of Aleta Rice ("Rice Decl.") ¶ 6 (Dkt. No. 108).) A claimant on the Daily Roll must submit a CA-7 form periodically in order to continue to receive FEC benefits. (*Id.*) OWCP may place a claimant on the Periodic Roll if the incapacitation is lengthy. (*Id.*)

September 26 to October 21, 2010.  (Def.'s 56.1 ¶ 10.)[4]  For each scheduled workday, Plaintiff

received FEC compensation for eight hours a day, for the pay period from September 21 to

October 23, totaling $2,267.08.  (*Id.* ¶ 11.)  The USPS also paid Plaintiff for working 20 days

during the pay period.  (*Id.*)  In other words, Plaintiff continued to receive workers'

compensation benefits as if she had not returned to work, but was also paid wages during that

time.

Jean Breyer, Manager of Human Resources Management for the USPS's Westchester

District, prepared forms CA-7 and CA-7a to correct the records to reflect that Plaintiff was on

the Periodic Roll for September 22 to September 27, and that for the remainder of the pay period,

Plaintiff was paid four hours per workday and on LWOP for four hours each day.  (*Id.* ¶ 13.)[5]

Plaintiff signed the forms and Breyer sent them to OWCP, (*id.* ¶ 14; *see also* Decl. of Brandon

Cowart, Esq. (Oct. 29, 2016) Ex. 4, at 1208 (Dkt. No. 103)), but Breyer failed to include the back

of the CA-7 form in her submission, (Def.'s 56.1 ¶ 15).  On December 10, 2010, Breyer sent the

full forms to OWCP.  (*Id.* ¶ 16.)[6]

----

[4] An injured worker on the Periodic Roll is not required to submit CA-7 forms.  (*See* Rice Decl. ¶ 6.)  Instead, she is automatically paid every 28 days.  (*Id.*)

[5] The Court notes that there was some confusion as to when Plaintiff was required to return to work and whether she returned to work on a part-time or full-time basis.  (*See* Decl. of Brandon Cowart, Esq. (Oct. 29, 2016) Ex. 10 (Dkt. No. 103).)  It was ultimately determined that Plaintiff was properly on the Periodic Roll from September 22 to September 27.  (Def.'s 56.1 ¶ 13.)

[6] From November 20, 2010 until March 11, 2011, Plaintiff stopped reporting for her regularly scheduled work shifts and was marked as LWOP.  (Pl.'s 56.1 ¶¶ 12, 17.)  In late November 2010, Plaintiff went to Greystone station and attempted to obtain a Good Standing Letter, but was denied the letter by Postmaster Robert Cobelli, due to Plaintiff's poor attendance in the preceding weeks.  (*See* Opinion 4.)  Following disruptive behavior, police were called to remove Plaintiff from the premises.  (*Id.*)  Similar incidents requiring police intervention occurred on February 28, March 30, and April 1, 2011.  (*See id.* at 4–6.)  Plaintiff was issued a Notice of Removal Letter on April 26, 2011.  (Def.'s Prior 56.1 ¶ 27, Pl.'s 56.1 ¶ 27.)

On December 9, 2010, Plaintiff signed and submitted CA-7 and CA-7a forms for the November 6 to November 19, 2010 pay period.  (*Id.* ¶ 17.)  Breyer noted that Plaintiff had omitted six days of compensable time and added the omitted days to the CA-7a form before sending the forms to OWCP.  (*Id.*)  Plaintiff received FEC benefits for the pay period on December 17, 2010.  (*Id.*)

On February 3, 2011, Plaintiff submitted a CA-7 form for the pay period from November 20, 2010 to February 3, 2011.  (*Id.* ¶ 19.)  Plaintiff's submission failed to include a CA-7a form and thus was incomplete.  (*Id.*)

On March 19, 2011, Plaintiff and Breyer prepared CA-7 and CA-7a forms for all pay periods from November 4, 2010 to March 11, 2011, despite the fact that Plaintiff had already received benefits for certain periods within the timeframe.  (*Id.* ¶ 20.)  On April 8, 2011, Plaintiff received benefits for each pay period from December 2010 to February 2011, for which Plaintiff was eligible.  (*Id.*)

On April 18, 2011, Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint of Discrimination, alleging she was given "unreasonable accommodations and improper restoration" and that Plaintiff's supervisor "failed to return credits for seniority."  (*See* Decl. of Brandon Cowart, Esq. (Jan. 20, 2016) Ex. 42 (Dkt. No. 81).)  Plaintiff's EEO Complaint was amended on May 20, 2011 to add a challenge to the Notice of Removal.  (*Id.* Ex. 1, at D0269.)

B.  Procedural History

Plaintiff filed her Complaint in the instant Action on December 13, 2011, alleging that USPS discriminated against her on the basis of her disability, race, sex, and national origin, and retaliated against her for prior EEO activity, in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.  (*See* Dkt. No. 2.)  Specifically, Plaintiff's

Complaint alleges that she was denied a reasonable accommodation upon her return to work and was discriminatorily denied a Good Standing Letter, prevented from returning to her pre-injury route, and ultimately terminated.  (*See generally id.*)  Plaintiff seeks "full 35 years retirement [benefits], back pay [and] liability," as well as 50 million dollars in compensatory and punitive damages.  (*See id.* at 4.)

On January 19 and 20, 2016, Defendant filed a motion for summary judgment and accompanying papers, (*see* Dkt. Nos. 78–84), and Plaintiff filed her opposition on February 23, 2016, (*see* Dkt. No. 87).  Defendant filed reply papers on March 15, 2016.  (*See* Dkt. Nos. 88–89.)  With the Court's permission, Plaintiff substituted attachments to her opposition on March 16, 2016, (*see* Dkt. Nos. 90–91), and Defendant submitted amended papers on September 29, 2016, (*see* Dkt. Nos. 92–94).

On September 30, 2016, the Court issued an Opinion & Order, granting Defendant's motion for summary judgment in its entirety.  (Opinion 26.)  In its Opinion, the Court noted that Plaintiff's various submissions referenced "her failed efforts to have a 'ca-7' form properly filled out by USPS."  (*Id.* at 26 n.17.)  While the Court acknowledged that Defendant's summary judgment motion "d[id] not construe Plaintiff's filings to raise a discrimination claim based on this conduct," (*id.*), the Court construed Plaintiff's Complaint as asserting such a claim, (*id.*).  Accordingly, Defendant was granted leave to file an additional motion for summary judgment as to the discrimination claim.  (*Id.*)  On October 29, 2016, Defendant filed the instant Motion.  (Dkt. No. 100.)  On November 14, 2016, Plaintiff filed a declaration in opposition.  (Dkt. No. 110.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at *2 (S.D.N.Y. Apr. 9, 2014) (same).  "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that [her] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*, No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted).  At summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, MDL No. 1358, No. M21–88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted).

B.  Analysis

Defendant moves for summary judgment on Plaintiff's discrimination and retaliation claims related to the alleged mishandling of her workers' compensation forms.  (*See* Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") 1–2 (Dkt. No. 101).)[7]

1.  Plaintiff's Discrimination Claim

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To prevail on such a claim under Title VII in the absence of direct evidence of discrimination, a plaintiff usually must satisfy the *McDonnell Douglas* three-part burden-shifting test.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).[8]  Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of proving a prima facie case of discrimination.  *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  To state a prima facie case of discrimination, a plaintiff "must show: (1) that [she] belonged to a protected class; (2) that [she] was qualified for

---

[7] While Defendant states that in "[l]iberally construing the complaint, the Court found that Alexidor was asserting an additional discrimination and retaliation claim," (Def.'s Mem. 1), the Court does not read its prior Opinion as construing the Complaint as asserting a retaliation claim.  (*See* Opinion 26 n.17 ("Although Defendant's motion papers do not construe Plaintiff's filings to raise *a discrimination claim* based on this conduct, the Court, liberally construing Plaintiff's Complaint, does construe it to assert such *a claim*.  Accordingly, if so desired, Defendant may file an additional motion for summary judgment . . . addressing *the claim*, including, to the extent relevant, whether *the claim* is exhausted and the merits of *the claim*." (emphases added) (citation omitted).)  However, as Defendant has addressed Plaintiff's claim of retaliation, the Court does so as well.

[8] "Where there is direct evidence that race was the motivating factor, 'the *McDonnell Douglas* search for a motive is unnecessary and therefore inapplicable.'"  *Patrolmen's Benevolent Ass'n v. City of New York*, 74 F. Supp. 2d 321, 333 (S.D.N.Y. 1999) (quoting *Johnson v. New York*, 49 F.3d 75, 79 (2d Cir. 1995)).

the position [she] held; (3) that [she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see also Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 518 (S.D.N.Y. Mar. 1, 2016) (same). If the plaintiff states a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb*, 521 F.3d at 138 (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also Abdu-Brisson*, 239 F.3d at 468 (same). "If such a reason is provided, [the] plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." *Holcomb*, 521 F.3d at 138; *see also Abdu-Brisson*, 239 F.3d at 469 ("Once the employer has articulated non-discriminatory reasons for the challenged employment actions, the presumption of discrimination vanishes and the burden shifts back to the plaintiff to come forward with evidence that the employer's proffered explanations were merely pretextual and that the actual motivations more likely than not were discriminatory.").

Defendant asserts that Plaintiff cannot meet this standard because she suffered no adverse employment action and has not adduced evidence of circumstances that give rise to an inference of discrimination. (*See* Def.'s Mem. 11–13.)

### a.  Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal quotation marks omitted). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal

quotation marks omitted).  Examples include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'"  *Id.* (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

The Court construed Plaintiff's filings to raise a discrimination claim based on Defendant's delay in processing Plaintiff's CA-7 and CA-7a forms requesting workers' compensation benefits.  (*See* Opinion 26 n.17.)   Plaintiff's Complaint refers to a white carrier, "George," who Plaintiff "witness[ed] . . . come in and submit his form[] CA-7 . . . which was signed and submitted and pa[i]d" in a purportedly timely manner.  (Compl. 7; *see also id.* at 11 ("I have not received any payments from worker's comp[ensation] because the majorities . . . have been sitting on my fo[r]ms for payment . . . ." (emphasis omitted); *id.* at 30 ("[I] still have not received payment for [the] period of September 21, 2010–November 3, 2010." (emphasis omitted)).)

As to Plaintiff's assertions that she has not received payment for the September 21 to November 3 pay period, Defendant responds that OWCP committed an error, specifically that "OWCP mistakenly left [Plaintiff] on the Periodic Roll after she returned to work in September 2010," which resulted in an *overpayment* to Plaintiff in the amount of $2,267.08.  (Def.'s Mem. 11.)  Defendant contends that when OWCP became aware of the error, it contacted the HR Department at USPS.  (*Id.*)  While "USPS provided the CA-7 and CA-7a forms to correct the problem, OWCP did not correct the overpayment."  (*Id.*)  It appears from Plaintiff's filings that she *never* "received [workers' compensation] payment for [the] period of September 21, 2010– November 3, 2010."  (Compl. 30.)  Defendant does not contend that Plaintiff's claims regarding the lack of benefit payments are false, but rather asserts that Plaintiff was overcompensated

during this pay period due to being left on Periodic Roll.  (*See* Def.'s Mem. 12 (asserting

Plaintiff "receiv[ed] too much compensation for the pay period in question").)  While it is true

that Plaintiff never received the four hours per day of FEC benefits to which she was entitled, the

Court agrees with Defendant that Plaintiff has suffered no adverse employment action for the

September 21 to November 3 pay period as the administrative error that resulted in her

*overcompensation* was never corrected.  Plaintiff suffered none of the illustrations of adversity,

such as termination, demotion, a decrease in salary, or diminished responsibilities, *see Vega*, 801

F.3d at 85, and therefore, has failed to state a claim for discrimination.

In regard to Plaintiff's claims in connection with the subsequent pay period, November 6

to November 19, 2010, Plaintiff received the FEC benefits owed to her on December 17, 2010.

(Def.'s 56.1 ¶ 17.)  Thus, any alleged adverse employment action appears to be the weeks-long

delay that resulted from the failure to timely process Plaintiff's CA-7 and CA-7a forms.  As

Defendant notes, courts in the Second Circuit have repeatedly held that delay in the processing of

workers' compensation papers, overtime payment, or paychecks is not an adverse employment

action.  *See Carter v. Potter*, No. 06-CV-3854, 2008 WL 1848639, at *4 (E.D.N.Y. Apr. 23,

2008) ("[A] delay of only several months . . . do[es] not rise to the level of adverse employment

action[]."); *Miller v. N.Y.C. Health & Hosp. Corp.*, No. 00-CV-140, 2005 WL 2022016, at *6

(S.D.N.Y. Aug. 22, 2005) ("The plaintiff has failed to set forth any evidence that indicates the

delayed payment . . . was anything more than a mere inconvenience."), *aff'd*, 198 F. App'x 87

(2d Cir. 2006); *Lee v. N.Y. State Dep't of Health*, No. 98-CV-5712, 2001 WL 34031217, at *17

(S.D.N.Y. Apr. 23, 2001) ("[The] [p]laintiff does not provide any evidence as to the effect of this

delay or even the length of the delay.  There is, therefore, insufficient evidence to sustain a

finding that this delay in paying overtime compensation constituted an adverse employment

action."); *Badrinauth v. Touro Coll.*, No. 97-CV-3554, 1999 WL 1288956, at *6 (E.D.N.Y. Nov. 4, 1999) ("A delay in the receipt of a paycheck is not an adverse employment action."); *but see Miller*, 2005 WL 2022016, at *6 ("A four-year span may constitute more than inconvenience.").

Moreover, Defendant notes that "[a]ny delay in the processing of [Plaintiff's] FEC benefits" was a result of Plaintiff's delay in submitting completed CA-7 and CA-7a forms. (Def.'s Mem. 12.)  Indeed, Plaintiff did not submit the forms for the November 6 to November 19, 2010 pay period until December 9, 2010, (Def.'s 56.1 ¶ 17), suggesting that at least some of the delay resulted from Plaintiff's own conduct, *see Miller*, 2005 WL 2022016, at *6 ("When an employee's own errors contribute to delayed payment, the employee cannot reasonably assert that he or she endured an adverse employment action."); *Badrinauth*, 1999 WL 1288956, at *6 (noting that the plaintiff failed to turn in his time sheets and attendance forms and acknowledged that this would result in a delay of processing).

Finally, as to any later pay periods, on April 8, 2011, Plaintiff received benefits for each pay period from December 2010 to February 2011 for which Plaintiff was eligible.  (Def.'s 56.1 ¶ 20.)  Again, while Plaintiff may have suffered inconvenience from the delay in processing the forms or receipt of benefits, this does not amount to an adverse employment action.

### b.  Discriminatory Intent

Even were the above actions considered adverse, Plaintiff has pointed to no evidence that any of these actions was motivated by discriminatory intent on the basis of Plaintiff's race, sex, or national origin.  As noted in the Court's prior Opinion, (*see* Opinion 16), Plaintiff provides no evidence of any discriminatory comments by any USPS supervisors or co-workers directed at Plaintiff or others in her protected groups, *cf. Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (finding an inference of discrimination can be derived from, among other

13

circumstances, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group"). Plaintiff's reference to a white carrier who did not experience delay in the processing of his forms is insufficient to raise an inference of discrimination. "When considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, [the Second Circuit has] said that the plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted). Here, Plaintiff provides no details about the circumstances under which her comparator, "George," submitted his forms. For example, Plaintiff offers no evidence that George was subject to similar administrative errors yet had his claims processed in a timely manner. As Plaintiff does not offer any evidence from which a discriminatory motive can be drawn, Plaintiff has failed to state a prima facie claim of discrimination and Defendant is entitled to summary judgment on this claim.[9]

### 2. Plaintiff's Retaliation Claim

Title VII prohibits discrimination against an employee "because he [or she] has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e–3(a). Courts analyze claims for retaliation pursuant to Title VII under the three-part *McDonnell Douglas* framework

---

[9] Assuming Plaintiff did state a prima facie claim of discrimination, Defendant has offered a legitimate, non-discriminatory reason for the delay in processing her workers' compensation papers—administrative error. *See, e.g.*, *Dressler v. N.Y.C. Dep't of Educ.*, No. 10-CV-3769, 2012 WL 1038600, at *16 (S.D.N.Y. Mar. 29, 2012) (finding the defendant's claim of administrative error was a "legitimate non-discriminatory reason[] for all of the adverse employment actions" the plaintiff could claim); *Plourde v. Snow*, No. 02-CV-5532, 2006 WL 4510754, at *12 (E.D.N.Y. June 14, 2006) (finding administrative error to be a legitimate non-discriminatory reason), *aff'd sub nom. Plourde v. Paulson*, 236 F. App'x 656 (2d Cir. 2007).

discussed *supra*.  *See Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal . . . retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*.").  A plaintiff establishes a prima facie case of retaliation by showing: (1) "participation in a protected activity"; (2) "the defendant's knowledge of the protected activity"; (3) "an adverse employment action"; and (4) "a causal connection between the protected activity and the adverse employment action."  *Id*. at 844 (internal quotation marks omitted).

Defendant argues that Plaintiff "fails to demonstrate a causal connection between any EEO activity and FEC claim processing."  (Def.'s Mem. 15.)

A plaintiff can demonstrate the necessary causal connection one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Richardson v. Bronx Lebanon Hosp.*, No. 11-CV-9095, 2014 WL 4386731, at *12 (S.D.N.Y. Sept. 5, 2014) (same); *Weber v. City of New York*, 973 F. Supp. 2d 227, 270 (E.D.N.Y. 2013) (same).  The Court previously addressed Plaintiff's retaliation claims in connection with Defendant's refusal to provide her with a Good Standing Letter and found that Plaintiff offered no direct evidence of disparate treatment and thus could "only rely on a temporal connection between the protected activity and adverse employment actions." (Opinion 24.)  The same is true as to any claim Plaintiff has that the delay in the processing of her workers' compensation paperwork was in retaliation for EEO activity.

"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse

action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation marks omitted); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation.").

As previously noted, in regard to Plaintiff's 2008 EEO activity, because more than two years had passed between the activity and the alleged retaliatory delay in the processing of Plaintiff's CA-7 and CA-7a forms, Plaintiff has not established a prima facie case of retaliation. (*See* Opinion 24–25 (finding "roughly two years" was not close enough in proximity to establish a claim for retaliation and collecting cases).) Plaintiff next contacted the EEO on December 29, 2010, *in response to* the delay in the processing of her workers' compensation paperwork. (*See* Def.'s Corrected Local Rule 56.1 Statement of Undisputed Facts ¶ 29 (Dkt. No. 93).) As such, any purportedly adverse action could not have been in retaliation for EEO activity that occurred *after* the action. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 100), enter judgment for Defendant, and close this case, as all of Plaintiff's other claims were dismissed in the Court's prior Opinion.

SO ORDERED.

Dated:     March ⟨d⟩, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16